UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON STANCIEL,

        Plaintiff,

                                          Civil Case No. 11-11512

v.                                   Honorable Patrick J. Duggan

PATRICK R. DONAHOE, Postmaster General of
the United States,[1]

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On April 8, 2011, Milton Stanciel ("Plaintiff"), a former United States Postal

Service employee, filed this action alleging employment discrimination based on gender

and disability.  In a First Amended Complaint filed June 19, 2012, Plaintiff asserted the

following claims against Defendant: (I) disability discrimination under the Rehabilitation

Act of 1973; (II) disability discrimination under the Michigan Persons With Disabilities

Civil Rights Act; (III) a violation of his procedural due process rights under 42 U.S.C.

§ 1983; (IV) a substantive due process violation under 42 U.S.C. § 1983; (V) gender

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); and (VI)

gender discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

_____

[1]Plaintiff initially named John E. Potter in his official capacity as the Postmaster
General as Defendant.  Substitution has been made in accordance with Federal Rule of
Civil Procedure 25(d) as Mr. Donahoe was appointed to that position in October 2010.
*See* http://about.usps.com/who-we-are/leadership/pmg-exec-comm.htm#p=1.

Defendant filed a motion to dismiss Plaintiff's claims on July 5, 2012.  As a result of

Plaintiff's subsequent abandonment of certain claims and this Court's ruling on

Defendant's motion to dismiss, only Counts I and V of Plaintiff's First Amended

Complaint remain pending.

 Presently before the Court is Defendant's motion for summary judgment with

respect to those remaining claims, filed pursuant to Federal Rule of Civil Procedure 56 on

February 12, 2013.  The motion has been fully briefed and the Court held a motion

hearing on May 2, 2013.  For the reasons that follow, the Court grants Defendant's

motion.

## I. Summary Judgment Standard

 Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central

inquiry is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

After adequate time for discovery and upon motion, Rule 56 mandates summary

judgment against a party who fails to establish the existence of an element essential to

that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

 The movant has the initial burden of showing "the absence of a genuine issue of

2

material fact." *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

## II.     Factual and Procedural Background

Plaintiff began working for the United States Postal Service ("USPS") as a mail handler on or about January 1, 1991.  (First Am. Compl. ¶ 8.)  Prior to that date, and beginning in 1989, he worked for USPS as a casual temporary employee.  As an employee of USPS, Plaintiff was a member of the National Postal Mail Handlers Union, Local 307 ("union").  (*Id.* ¶ 14.)

Plaintiff suffers from a mental impairment.  (*Id.* ¶ 11.)  He was diagnosed with a learning disability in sixth grade and attended special education classes throughout his

3

primary and secondary education. (Def.'s Mot. Ex A at 9-10, 25-26, 30.)  Because of his

mental impairment, Plaintiff's initial hiring with USPS was through its special hiring

process.  This allowed Plaintiff to be excused from USPS' standard postal service exams

to determine literacy or ability to serve as an employee.  (*Id.*)

Among the paperwork completed when Plaintiff was first hired by USPS is a

certification of disability form which lists Plaintiff as having disability code 90, defined

as "mental retardation."  (Def.'s Mot. Exs. C, T.)  The form is dated January 23, 1990.

(*Id*. Ex. T.)  There is no other mention of Plaintiff's disability in his employment file.  He

was identified on other forms used to record personnel actions as a code "05," signifying

no disability.  (*Id*. Exs. B, C.)

As a regular, full-time mail handler, Plaintiff was assigned to USPS' Bulk Mail

Center in Allen Park, Michigan.  (First Am. Compl. ¶ 15.)  He became a "sack sorter,"

keying in zipcodes of mail as it passed him on a conveyor belt.  Plaintiff excelled at his

work, keying 850-900 pieces of mail an hour– where the quota was 550– at a 97%

accuracy rate.  (Def.'s Mot. Ex. A at 71-72.)

During his tenure at USPS, Plaintiff lived at different locations in Detroit.  He

either drove or took the bus to work until early 2006, when his driver's license was

suspended.  He then rode the bus almost exclusively.  Plaintiff learned a different bus

route to the Allen Park facility from each of his residences.  (*Id*. at 77.)

Throughout his employment with USPS, Plaintiff experienced attendance

problems.  The Court attaches to this decision the chart Defendant provides in its motion

summarizing the disciplinary actions taken against Plaintiff for attendance problems before the action at issue in this case.[2]  (*See* Attach. A; *see also* Def.'s Br. in Supp. of Mot. at 11-13.)  As reflected in that summary, Plaintiff received thirteen multi-day suspensions for attendance infractions between July 1994 and June 2009.  (*See id*.)  Plaintiff also received five notices of removal during his tenure with USPS that ultimately were modified to provide him with another chance to retain his employment.  Plaintiff was terminated following a sixth notice of removal.

Plaintiff utilized various strategies during his employment to avoid attendance infractions.  For a while he called into work ahead of time when he knew he would be a few minutes late and asked his supervisor, Donna Bright, to punch him in before he arrived.  (Def.'s Mot. Ex. A at 78.)  Eventually Ms. Bright refused to do this after Plaintiff made the request "too many times."  (*Id*. at 78, 93.)  Even though he knew it was against the attendance rules, Plaintiff also took his time card home with him overnight so he could clock in at the first time clock he encountered when entering the facility rather than at the clock closest to his work station, where his time card normally would be kept. (*Id*. at 79-80.)  Plaintiff also obtained permission from Ms. Bright to use annual leave to cover the time he missed when tardy.  (*Id*. at 84-85.)  Eventually, however, Plaintiff ran

---

[2]Certain details regarding Plaintiff's infractions and/or discipline are missing from Defendant's summary.  (*See* Def.'s Br. in Supp. of Mot. at 11-13.)  After the motion hearing, Defendant submitted the documents providing further details of the infractions. (ECF No. 48.)  Plaintiff, however, has not disputed the accuracy of Defendant's summary of his attendance infractions and the details of the discipline are not determinative to Defendant's motion.

out of annual leave to use.  (*Id*.)

Plaintiff was disciplined for being absent without leave ("AWOL") on many occasions.  (*See* Attach. "A"; ECF No. 48.)  Nevertheless, as he testified during his deposition in this matter, he was aware of the USPS form he needed to complete to comply with the general procedure for requesting time off of work, even if he needed to ask co-workers to help him complete the form.  (*Id*. at 86-90.)  On at least one occasion where Plaintiff requested but was denied leave, he decided to take the time off anyway. (*Id*. at 92.)

In 2008, Plaintiff developed a drinking problem and was drinking alcohol on a daily basis.  (*Id*. at 103.)  He testified that he did not have a drinking problem before then. (*Id*. at 62.)  He also was using marijuana and cocaine.  (*Id*. at 65, 124.)  Plaintiff testified that he drank one can of beer at lunch and maybe one can before work.  (*Id*. at 103-04.) He further testified, however, that he never drank at work, was never drunk at work, and his drinking never interfered with his work tasks.  (*Id*. at 104.)  According to Plaintiff, he heard second- or third-hand that Ms. Bright and two other USPS employees, Darwin Walker and Harold Solomon, smelled alcohol on him on one or more occasions.  (*Id*. at 105-07.)

On February 4, 2009, Plaintiff participated in a pre-disciplinary or investigative interview for a proposed 14-day suspension for attendance infractions.  (Def.'s Mot. Ex. V.)  In the interview, he indicated that the reason for his poor attendance was "car problems."  (*Id*.)  At this time, Plaintiff asked to participate in the Employee Assistance

6

Program or "EAP." (*Id*. Ex. P at 9, 83.) Ms. Bright provided him with instructions on how to reach EAP. (*Id*.)

On September 22, 2009, Plaintiff participated in another pre-disciplinary or investigative interview for attendance problems. (Def.'s Mot. Ex. H.) Plaintiff again cited transportation problems as the reason for his absences. (*Id*.) During her deposition in this matter, Ms. Bright testified that she did not offer Plaintiff an accommodation at this meeting because she did not know one was needed. (*Id*. Ex. P at 12.) She further testified that she was unaware of Plaintiff's drinking problem and Plaintiff did not inform her of his problem during the interview.[3] (*Id*. at 51.) Ms. Bright also testified that she was unaware USPS certified Plaintiff as disabled. (*Id*. at 25.)

On September 22, 2009, Betty Mitchell, Acting Supervisor Distribution Operations, issued a letter of removal notifying Plaintiff of his termination effective October 30, 2009. (Def.'s Mot. Ex. K.) The letter stated that the termination was based on irregular attendance. (*Id*.) After receiving the letter, Plaintiff consulted with a union representative who advised him to enter rehabilitation to try and get his job back. (*Id*. Ex. A at 157-58.) Plaintiff was admitted to an in-patient alcohol and drug abuse treatment

---

[3]In his response brief to Defendant's motion, Plaintiff states that he informed Ms. Bright at the pre-disciplinary interview meeting of his need for an accommodation to correct his disability of alcoholism. (Pl.'s Resp. Br. at 18.) Plaintiff cites no evidence, however, to support this assertion. While he cites to the "Due Process Investigative Interview Attendance" form completed on the date of the meeting (*see id*.), the form does not mention Plaintiff's drinking, alcoholism, or need for an accommodation for alcoholism. (Pl.'s Resp. Ex. 21.)

program on September 26, 2009. (First Am. Compl. ¶ 28.) He returned to work on

October 8, 2009, and remained at work until his removal effective October 30, 2009. (*Id.*

¶ 29.) He claims that he maintained a perfect attendance record during this period. (*See*

Pl.'s Resp. Br. at 19, citing Ex. 24.)

On October 29, 2009, with the assistance of a union representative, Plaintiff filed a

grievance concerning his termination. (Def.'s Mot. Ex. D.) In the grievance, Plaintiff

stated that he has a mental disability and asked that USPS "address" his disability. (*Id.*)

On May 20, 2010, a Redress Meeting was conducted with Plaintiff, union representatives

Glenn Berrien and Mike Mendez, and Plant Manager Keith Pugh. (Def.'s Mot. Ex. A at

174.) As a result of this meeting, a Redress Mediation Settlement Agreement was

reached whereby Plaintiff was given another chance to return to work on the condition

that he *inter alia* maintain regular attendance and pass a medical clearance, including a

clean drug test. (*Id.* Ex. U.) Plaintiff subsequently repudiated the agreement, however,

claiming that the required drug test was an unfair condition. (*Id.* Ex. W.) On December

15, 2010, an arbitrator denied Plaintiff's grievance on the grounds that USPS "had just

cause for [his] removal . . .." (*Id.* Ex. E.)

On November 12, 2009, Plaintiff contacted an Equal Employment Opportunity

("EEO") counselor alleging that he was terminated because of "mental disability"

discrimination. (Def.'s Mot. Ex. I.) On December 10, 2009, USPS sent Plaintiff a notice

informing him that he had to file a formal discrimination complaint with USPS within 15

days. (*Id.* Ex. J.) Plaintiff did not file a formal complaint in that time period.

8

On April 6, 2010, Plaintiff again contacted an EEO counselor to initiate counseling concerning the September 22, 2009 removal notice.  (*Id*. Ex. L.)  This time, Plaintiff alleged hostile work environment, sex discrimination, physical disability discrimination, retaliation, and age discrimination and he filed a timely formal discrimination complaint. (*Id*. Exs. L, M.)  USPS dismissed the complaint on July 28, 2010.  (*Id*. Ex N.)  The decision was upheld by the Equal Employment Opportunity Commission ("EEOC") on February 9, 2011.  (*Id*. Ex. O.)  On that date, the EEOC sent Plaintiff a right to sue letter. (First Am. Compl. ¶ 33.) As indicated previously, he filed the present action on April 8, 2011.

## III.    Applicable Law and Analysis

In Count I of his First Amended Complaint, Plaintiff alleges that he suffers, or suffered during the relevant period, from two disabilities: a severe mental impairment and alcoholism.  (First Am. Compl. ¶ 38.)  He further alleges that, with or without reasonable accommodations, he was qualified to perform the job duties of a mail handler but Defendant failed to reasonably accommodate his disabilities in violation of the Rehabilitation Act.  (*Id*. ¶¶ 38, 40.)  Plaintiff also claims that "Defendant . . . repeatedly disciplined and terminated Plaintiff solely because of his disabilities" and that similarly situated, non-disabled employees "were not disciplined and/or terminated for their many attendance infractions."  (*Id*. ¶ 45.)

In Count V, Plaintiff claims that his termination constituted gender discrimination in violation of Title VII.  (*Id*. ¶¶ 78-83.)

### A.      Failure to Accommodate in Violation of the Rehabilitation Act

To prevail on his "failure to accommodate" claim, Plaintiff must first establish a *prima facie* case by showing that: (1) he is an individual with a disability; (2) he is qualified for the position; (3) Defendant was aware of his disability; (4) an accommodation was needed , i.e., a causal relationship existed between the disability and the request for accommodation; and (5) Defendant failed to provide the necessary accommodation.  *DiCarlo v. Potter*, 358 F.3d 408, 419 (2004).  If Plaintiff presents a *prima facie* case, the burden shifts to Defendant to demonstrate that Plaintiff cannot reasonably be accommodated, because the accommodation would impose an undue hardship on its operations.  *Id*.  Defendant seeks summary judgment with respect to this claim, arguing: (1) Plaintiff's alcohol use does not constitute a disability because it did not limit any of his major life activities; (2) Defendant was unaware of Plaintiff's alcoholism and mental disability; (3) Plaintiff did not request an accommodation for his alleged disabilities; and, (4) he was not otherwise qualified for his position because he could not perform the "essential function" of regular attendance even with the accommodations he now seeks.  While the Court believes that most of Defendant's arguments entitle it to summary judgment on Plaintiff's failure to accommodate claim, it will address only some of those arguments here.

First, the Court agrees that Plaintiff fails to show that he was disabled because of alcoholism.  To be disabled for purposes of the Rehabilitation Act, a plaintiff must "(1) have a physical or mental impairment which 'substantially limits' him or her in at least

one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment." *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002) (quoting 29 U.S.C. § 705(20)(B)).  Alcoholism constitutes a disability if, like other physical or mental conditions, it "substantially limits one or more major life activities." *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 479 n.4 (6th Cir. 2005).  Here, Plaintiff asserts in response to Defendant's motion that alcoholism affected his ability to work.  (Pl.'s Resp. Br. at 26-27.)  Plaintiff, however, presents no evidence suggesting that his alcoholism substantially limited his ability to work or engage in one or more other major life activities.  Importantly, Plaintiff specifically testified during his deposition that he was never drunk at work and that his drinking never interfered with his work tasks.  (Def.'s Mot. Ex. A at 104.)

Plaintiff also has not shown that Defendant was aware of his alcoholism.  *At most* he creates an issue of fact with respect to whether a supervisor and co-worker on one occasion smelled alcohol on his breath.[4]  (*See* Pl.'s Resp. Br. at 18 n.23, citing Ex. 1 at 105.)  This, however, does not raise a question of fact with respect to whether the

_____

[4]Plaintiff testified during his deposition that he only heard from "other people" that Ms. Bright smelled alcohol on his breath.  (Pl.'s Resp. Ex. 1 at 105-06.)  He could not remember who those people were and the admissibility of this evidence is doubtful as it contains several levels of hearsay without an apparent exception.  A summary judgment opponent must "make [his] case with a showing of facts that can be established by evidence that will be admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing Fed. R. Civ. P. 56(e)(2)). Accordingly, hearsay evidence cannot be considered in a motion for summary judgment. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

supervisor was aware that Plaintiff was an alcoholic.

The Court also finds insufficient admissible evidence showing that Plaintiff's supervisors were aware of his mental disability. While he presents evidence indicating that his supervisors and co-workers knew he had some mental impairment, this is not equivalent to knowing that he had a "disability" as defined under the law. *See* 29 U.S.C. § 705(20)(B) (defining "disability" as requiring, not only a physical or mental impairment, but one "that substantially limits one or more of the major life activities of such individual."). As the Fifth Circuit Court of Appeals has explained:[5]

> For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. The distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. [§] 1630.2(j), App. (1995); 42 U.S.C. § 12112(a)(5)(A) ("[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known physical or mental *limitations* of an otherwise qualified individual with a disability . . ..") (emphasis added); 29 C.F.R. [§] 1630.9, App. (1995)("Employers are obligated to make reasonable accommodations only to the physical or mental *limitations* resulting from the disability that is known to the employer.") (emphasis added).

*Taylor v. Principal Fin. Grp., Inc*., 93 F.3d 155, 164, *cert. denied*, 519 U.S. 1029, 117 S.

Ct. 586 (1996). The *Taylor* court pointed out that "while a given disability may limit one

---

[5]The Fifth Circuit was addressing a disability discrimination claim brought under the Americans with Disabilities Act ("ADA"); however, cases construing the Rehabilitation Act and ADA are generally applicable to both. *See A.C. ex rel. J.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 696-97(6th Cir. 2013) (citing *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir.1997)).

employee (and therefore necessitate a reasonable accommodation), it may not limit another." *Id*. For that reason, the court held that "it is incumbent upon the . . . plaintiff to assert not only a disability, but also any limitation resulting therefrom." *Id*. The Rehabilitation Act, like the ADA as indicated by the *Taylor* court, only makes it unlawful for an employer to fail to make a reasonable accommodation for the "*known* physical or mental *limitations* of an otherwise qualified applicant or employee with a disability, . . .." 29 C.F.R. § 1630.9(a) (emphasis added).

Plaintiff does not point to any evidence in the record that would lead a reasonable trier of fact to conclude that his supervisors knew or should have known that he was not arriving on time or was absent without leave because of his alleged disabilities.[6] Further, the requested accommodations that Plaintiff claims he made would not have alerted his supervisors to any limitation resulting from his disabilities.[7] Notably, when provided the

_____

[6]Interestingly, Plaintiff points out that he maintained a perfect attendance record after attending drug and alcohol rehabilitation. He states: "Clearly, Plaintiff's not drinking affected his ability to report to work timely." (Pl.'s Resp. Br. at 27.) This assertion undermines any claim that his attendance problems were related to his mental impairment, suggesting instead that they were solely the result of his alcoholism. As discussed above, however, there is no evidence that Defendant was aware of Plaintiff's alcoholism.

[7]In response to Defendant's motion, Plaintiff claims that he requested two accommodations. (*See* Pl.'s Resp. Br. at 22.) First Plaintiff claims that he "asked his supervisors for help with the Postal Service policies and procedures." (*Id*.) This refers to Plaintiff's requests for help completing attendance-related forms. (*Id*. at 9-10.) This "request" could not be interpreted as a request for an accommodation.

Second, Plaintiff claims that he requested a "revised work schedule." (*Id*. at 23.) While Plaintiff did not identify in his response brief what type of revised schedule he

(continued...)

opportunity to explain his attendance infractions, Plaintiff referred only to his transportation problems.

For these reasons, the Court holds that Defendant is entitled to summary judgment with respect to Plaintiff's claim that it failed to accommodate his disability in violation of the Rehabilitation Act.

### B.      Disability Discrimination in Violation of the Rehabilitation Act

Absent direct evidence of discrimination, the familiar *McDonnell Douglas* burden shifting formula applies to claims of disability discrimination under the Rehabilitation Act. *See Jones v. Potter*, 488 F.3d 397, 403-04 (6th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973)). According to this formula, the plaintiff first must present a *prima facie* case of discrimination by showing that: (1) he is disabled; (2) he is otherwise qualified for the job, with or without

---

[7](...continued)
specifically requested, he discusses two types recognized by USPS: (1) a "flex schedule" where employees arriving late by thirty (30) minutes or less may be required or permitted to make up the time by extending their work day (*id*. at 13, citing Ex. 17 [Handbook at 143.13]); and (2) an "alternative" work schedule where an employee is allowed to start and stop work at times different than the usual shifts. (*Id*. at 14, citing Ex. 18.) At the motion hearing, Plaintiff's counsel seemed to focus on the first type. USPS argued that such a revised work schedule is not reasonable because it would leave Plaintiff's position unattended for a significant period when he unexpectedly failed to show on time– often by more than thirty minutes– and would create a situation where two people would be present to do his job when his shift was scheduled to have ended. Further, the Court is not certain that such an "accommodation" would resolve Plaintiff's many attendance infractions for failing to report to work at all when scheduled (i.e., when he was AWOL) or arriving more than thirty minutes late. For the same reason, the Court does not see how an alternative work schedule would correct Plaintiff's attendance problems.

reasonable accommodation; (3) he suffered an adverse employment action; (4) his employer knew or had reason to know of his disability; and (5) he was replaced by a nondisabled person or his position remained open. *Jones*, 488 F.3d at 404 (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004)). "The final element 'may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.'" *Id.* (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Id.* (citation omitted). "Should the employer carry this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination." *Id.*

As discussed above, Plaintiff fails to demonstrate that USPS was aware of his alcoholism when it terminated him. Thus he cannot make out a *prima facie* case of discrimination based on that alleged disability.[8] Defendant seeks summary judgment with

---

[8]Moreover, as Defendant argues in its summary judgment motion, its dismissal of Plaintiff for his absenteeism, even if related to or caused by his alcoholism, does not constitute disability discrimination in violation of the Rehabilitation Act. *See Maddox v. Univ. of Tenn*, 62 F.3d 843, 846-48 (6th Cir. 1995), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314 (6th Cir. 2012). In *Maddox*, the court found that the University of Tennessee discharged the plaintiff for unacceptable conduct (i.e., driving while intoxicated) rather than his disability (i.e., alcoholism) and thus did not engage in disability discrimination. The court explained that

> to hold otherwise, an employer would be forced to accommodate all
> behavior of an alcoholic which could in any way be related to the

(continued...)

15

respect to Plaintiff's claim that it engaged in discrimination based on Plaintiff's mental disability arguing that he is not "otherwise qualified" for the mail handler position. More specifically, Defendant argues that regular attendance is an essential employment function and Plaintiff has not demonstrated that he can perform this function with or without a reasonable accommodation. Defendant also sets forth a legitimate, non-discriminatory reason for Plaintiff's termination (i.e., excessive attendance violations) and contends that Plaintiff cannot show that this reason was a pretext for disability discrimination. The Court will address only this last prong of the analysis.

It is Plaintiff's burden to demonstrate pretext. *Jones*, 488 F.3d at 406. To satisfy this burden, Plaintiff "must show by a preponderance of the evidence 'either (1) that the proffered reason[] had no basis in fact, (2) that the proffered reason[] did not actually motivate his discharge, or (3) that [the reason was] insufficient to motivate [his] discharge." *Id*. (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Plaintiff does not challenge the fact of his attendance violations. Instead, he claims essentially that those violations were insufficient to motivate his discharge. To make this point, he argues that female co-workers with attendance

---

[8](...continued)
alcoholic's use of intoxicating beverages; behavior that would be intolerable if engaged in by a sober employee or, for that matter, an intoxicated but non-alcoholic employee.

*Maddox*, 62 F.3d at 847.

problems were not terminated.

Plaintiff, however, fails to present *any* details of these co-workers' infractions. He does not establish what their attendance infractions were, when the infractions were accumulated, or how many times these co-workers violated USPS' attendance rules. As a result, Plaintiff presents insufficient evidence to enable a reasonable trier of fact to conclude that it was his disability– rather than attendance infractions– that led to his discharge.

The Court therefore holds that Defendant is entitled to summary judgment with respect to Plaintiff's claim of disability discrimination as well.

### C.      Gender Discrimination in Violation of Title VII

Plaintiff does not present direct evidence of gender discrimination and thus his Title VII claim is subject to the same *McDonnell Douglas* burden shifting test set forth in the previous section. *See Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008). To make out a *prima facie* case of gender discrimination, Plaintiff must show that he: (1) is a member of a protected group; (2) was subjected to an adverse employment decision; (3) was qualified for the position; and (4) was replaced by a person outside the protected class, or that similarly situated non-protected employees were treated more favorably. *Id.* (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)). For the reasons stated with respect to his disability discrimination claim, Plaintiff fails to raise an issue of fact concerning the last element of his *prima facie* case of gender discrimination. He does not claim that he was replaced by a woman and he presents no evidence of similarly-situated

17

female employees who were treated more favorably.

Thus the Court concludes that Defendant also is entitled to summary judgment with respect to Plaintiff's Title VII gender discrimination claim.

## IV.   Conclusion

Remaining in this action are Plaintiff's claims that Defendant failed to accommodate his disability and engaged in disability discrimination in violation of the Rehabilitation Act and discriminated against him on the basis of his gender in violation of Title VII.  For the reasons set forth above, Plaintiff fails to demonstrate a genuine issue of material fact and the Court holds that, based on the undisputed facts, Defendant is entitled to judgment as a matter of law with respect to these claims.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED** and Counts I and V of his First Amended Complaint are **DISMISSED WITH PREJUDICE**.

Dated:May 8, 2013                                s/PATRICK J. DUGGAN
                                                 UNITED STATES DISTRICT JUDGE


Copies to:
Felicia Duncan Brock, Esq.
AUSA Laura A. Sagolla

18

**Summary of Defendant's Discipline of Plaintiff for Attendance Infractions**

| DATE | DOCUMENT | DESCRIPTION |
|---|---|---|
| 6.11.92 | Letter of Warning | Failure to adhere to attendance regulations |
| 7.13.93 | Letter of Warning | AWOL |
| 7.24.93 | Grievance Settlement | Letter of Warning to be removed within 1 year provided no similar violations occur |
| 8.24.93 | Letter of Warning | Failure to adhere to attendance regulations |
| 7.7.94 | 7-Day Suspension | Unscheduled leave and AWOL-cited three prior Letters of Warning from June 1992, July 1993, and August 1993 |
| 7.24.94 | Grievance Settlement | Seven-day suspension reduced to three-day without lost time provided does not receive 3 infractions within a period of 6 months |
| 2.7.95 | 7-day Suspension | Unscheduled leave and AWOL. Cited 3 Letters of Warning and three-day suspension |
| 3.26.96 | 7-day Suspension | Unscheduled leave- failure to be regular in attendance. Two 3-day suspensions and 3 Letters of Warning |
| 4.17.96 | Grievance Settlement | 7-day suspension modified to working suspension, to remain in OPF for 6 months during which time attendance will be |

**Summary of Defendant's Discipline of Plaintiff for Attendance Infractions**

| DATE | DOCUMENT | DESCRIPTION |
|---|---|---|
|  |  | monitored and should he have 4 unexcused absences during that period, will be given a 7-day without modification. Six month period ends 10/17/96 |
| 9.23.97 | Letter of Warning | Unscheduled Leave |
| 4.21.98 | 5-day Suspension |  |
| 7.2.98 | 7-day Suspension |  |
| 9.8.98 | 14-day Suspension |  |
| 10.18.98 | 14-day Suspension |  |
| 4.16.99 | Notice of Removal #1 | Reduced to 14-day suspension |
| 1.5.00 | Notice of Removal #2 | Failure to maintain a regular work schedule. Cites 14-day of 5.6.99, 14-day of 4.16.99, 14-day of 10.18.98, 14-day of 9.8.98, 7-day of 7.2.98, 5-day of 4.21.98, and Letter of Warning of 9.23.97 |
| 3.21.01 | Letter of Warning |  |
| 7.2.01 | 7-day Suspension |  |
| 9.27.01 | 14-day Suspension |  |
| 4.2.02 | Notice of Removal #3 |  |
| 5.4.02 | Grievance Settlement | Reducing notice of removal to Last Chance Agreement #1 |
| 12.3.02 | Notice of Removal #4 | Based on violation of Last Chance Agreement #1 by |

**Summary of Defendant's Discipline of Plaintiff for Attendance Infractions**

| DATE | DOCUMENT | DESCRIPTION |
|------|----------|-------------|
| | | unscheduled leave and AWOL, plus earlier actions of 14-day dated 9.7.01, 7-day dated 7.2.01, and Letter of Warning dated 3.21.01 |
| 2.7.03 | Grievance Settlement | Reducing notice of removal to Last Change Agreement #2 (ordered to go to EAP) |
| 6.23.04 | Letter of Warning | Unscheduled leave |
| 12.3.04 | 7-day Suspension | |
| 1.9.06 | 14-day Suspension | Failure to adhere to attendance regulations |
| 6.20.06 | Notice of Removal #5 | |
| 8.7.06 | Grievance Settlement | Reducing notice of removal to 21-day suspension |
| 4.28.08 | Letter of Warning | |
| 9.27.08 | 7-day Suspension | Unscheduled leave and AWOL, cites Letter of Warning dated 4.26.08 |
| 10.18.08 | Grievance Settlement | 7-day suspension to remain in file for 7 months, to be expunged on 5.1.09 if discipline free for same or similar infractions |
| 2.4.09 | 14-day Suspension | Unscheduled leave, cites Letter of Warning of 4.28.08 and 7-day of 9.27.08 |

**Summary of Defendant's Discipline of Plaintiff for Attendance Infractions**

| DATE | DOCUMENT | DESCRIPTION |
|------|----------|-------------|
| 4.9.09 | Grievance Settlement | |
| 9.22.09 | Notice of Removal #6 | Unscheduled leave and AWOL, cited 14-day of 2.4.09, 7-day of 9.27.08, and Letter of Warning of 4.26.08 |